The next case this morning is 522-0111, Tart v. Illinois Human Rights Comm'n. Arguing for the appellant is Edward Sevchak. Arguing for the appellee is Alexandrina Shrove. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Tart v. Illinois Human Rights Comm'n Thank you, Your Honor. May it please the court and opposing counsel, this is an action seeking judicial review of a decision of the Illinois Human Rights Comm'n that the plaintiff's charge discrimination against his employer lacked substantial evidence and should be dismissed. The plaintiff, Lamarce Tart, was a long-time employee of the Ameren Corporation. He charged his employer with retaliation against him in denying him bereavement leave after the death of his father-in-law. Mr. Tart had opposed unlawful discrimination on a couple of previous occasions by making previous allegations of discrimination against him, and the basis of the charge was that this was the reason why Ameren denied him bereavement leave when his father-in-law had passed away. Ameren did have a policy providing for bereavement leave in the event that certain designated relatives passed away. In this particular case, the deceased was Mr. Tart's father-in-law. The relationship is somewhat complicated, however, by the fact that the deceased was not the biological father of Mr. Tart's wife. He had married Mr. Tart's wife's mother after his wife had been born, but nonetheless, Mr. Tart assumed he was his father-in-law. The man was married to the wife's mother when Lamarce and his wife were married and actually walked her down the aisle, and he considered the deceased to be his father-in-law. The policy did provide for bereavement leave in the event that an in-law, a father-in-law, passed away. Nonetheless, he was denied this leave. Now, on the other hand, Lamarce Tart's son, Lamarce Tart Jr., was also employed by Ameren, and the deceased was Lamarce Tart Jr.'s grandfather, although, once again, he was his grandfather-in-law and was not his biological father-in-law. We have an almost perfect comparator here where we have two employees of the same employer, one employee who had opposed unlawful discrimination in the past, the other one had not. With regard to the plaintiff, the deceased was his ex-father-in-law, with regard to the plaintiff's son, the deceased was his ex-grandfather. Nonetheless, Ameren denied the plaintiff his bereavement leave, but granted plaintiff's son's bereavement leave. Let me stop you, Counselor, for just a moment. I know that Apelli points out or argues that, one, the crux of the claim, I believe, is that there was a retaliatory reason for denying this gentleman's bereavement request, but in order for there to be retaliation, there had to have been some knowledge of why they were retaliating. I believe Apelli argues that the supervisors involved with denying the bereavement request were never made aware of Mr. Tartt's previous racial discrimination allegations, and so they could not have been retaliating for that because there was never any knowledge of it. That is one I would like you to address. The other is simply, with regard to Mr. Tartt Jr., as you referenced him, doesn't, for comparison purposes, isn't it, in discriminatory reasons, isn't it required that he be of an unprotected class, as a different class than the appellate here? We're both African Americans, and so wouldn't one of them need to be of a different unprotected class? Well, I guess I'll address your last answer first. In this case, the protected class is someone who has opposed unlawful discrimination. This is a retaliation claim. We have given up our claim that this was based on racial discrimination, primarily for the very reason Your Honor mentioned. Originally, we charged that this was the result of racial discrimination, but in light of the fact that father and son are of the same race, we conceded that this was not a matter of racial discrimination. Here, there is a protected class and an unprotected class, but the protected class is someone who has opposed unlawful discrimination and someone who has not. And so that would, I think, answer that question. With regard to Your Honor's first question about knowledge of the fact that the plaintiff had previously opposed discrimination, Mr. Tartt, the plaintiff, was denied the leave by Jeff Stoner, and I think the record indicates that Mr. Stoner was aware that Mr. Tartt had previously opposed discrimination. In fact, Jeff Stoner was involved in these previous incidents. Secondly, so I hope that that answers Your Honor's question. Thank you. The defendant claims as a defense that the father and son are not good comparators because they claim that there were two different supervisors who made the decision as to each of the employees who requested bereavement leave. Number one, we don't know that that's the case. That's what they say. In a circumstance like this, our hands are kind of tied. We can't go out and take a deposition or engage in discovery to see how we can refute that. But then number two, even if there were two separate supervisors making the decision, that still doesn't answer why our client was denied the bereavement leave. It doesn't answer what the motivation was in denying him the bereavement leave. There is only one rule. There's no discretion involved in how this rule applies. It should have either been a case that both employees should have been granted bereavement leave or both employees should have been denied bereavement leave. And we think that is sufficient evidence so that there is substantial evidence of discrimination so that the plaintiff should be permitted to pursue his claim further. Mr. Subcheck, isn't it just as the second supervisor made a mistake? I don't know. That's possible, but I don't know that it's just as possible. Once again, the only thing we can do in a case like this is follow what the investigator does. We can't go out and engage in discovery to try to refute some of these things. There was an investigation done, wasn't there? Well, yes, there was, Your Honor, but that investigation was not done by me or it was not done by the petitioner. It was done by the Department of Human Rights. As Your Honor might suspect, when you can actually get into discovery and have somebody sit down and testify under oath, a lot of times you uncover facts that otherwise would remain covered. In addition, the Illinois Department of Human Rights is bound by the injunction that if making a decision requires them to assess the credibility of witnesses, then they are supposed to find that there was substantial evidence of discrimination here. Here, I think the investigator ignored that requirement and simply chose to accept the credibility of the Ameren witnesses. Anyway, that's my response to that, Your Honor. Well, when the investigation was done, it seems like they responded that the simple reason was a complainant was not an immediate family member to this individual who passed. Well, the actual policy states the specific relatives who, when they pass, would qualify the employee for bereavement leave, and both a grandfather and a father-in-law are included in that. The individual who passed was really neither to your client. Well, depending on your interpretation, I would say legalistically that's true, but then the son should also have been denied bereavement leave. So, Your Honor, that will really conclude my presentation. If you have any other questions, I'll be glad to try to address them. Justice Welch? No questions. Justice Barberis? None. All right. Thank you, Mr. Sefcik. You'll have some time after Ms. Shrove's argument. Ms. Shrove, for the Attorney General? Good morning, and may it please the Court. My name is Alexandrina Shrove, Assistant Attorney General on behalf of Respondents, Illinois Human Rights Commission, and Illinois Department of Human Rights. Tert's employer, Ameren, denied his leave request because his relationship with Watkins did not qualify under the Collective Bargaining Agreement, or CBA, for bereavement leave. As a result, the Commission did not abuse its discretion when it sustained the dismissal of Tert's retaliation charge, and this Court should affirm that final administrative decision for two primary reasons. First, Tert did not present substantial evidence to establish his prima facie case for retaliation, and even if he had, Ameren provided a legitimate non-retaliatory reason for denying his leave request, and there was not substantial evidence that Ameren's proffered reason was pretextual. Second, the record included all of the documents required by the plain language of the administrative regulations, which does not include the investigation report's exhibits, so the Commission here already reviewed the entire administrative record in making its decision. Let me stop you for one second just to clarify. Who were the people involved with denying Mr. Tert's claim for bereavement? Which supervisors were involved with that? Your Honor, the individuals who first denied Tert's bereavement leave was his direct supervisor, Hamilton. The matter was then brought to a human resources department individual who then forwarded the issue on to Burke, who ultimately, as the superintendent of labor relations, made that final determination on Tert's request for that bereavement leave, and ultimately determined that the legal relationship between Watkins and Tert did not qualify under the CBA's language. And who is Greg Stoner, and how is he involved in that decision of denying the bereavement? Your Honor, there's no evidence in the record, nor was there any evidence in the investigation report to suggest that Stoner was involved in the denial of Tert's leave request. I believe that the extent of his involvement was that he was one of the individuals Tert complained about in the internal discrimination complaints in the summer of 2019. So he wasn't someone that Tert initially approached asking for the leave? No, Your Honor, the investigation report does not suggest, and did not produce any evidence to suggest that he was involved in that determination. And was there any indication in the record that Mr. Stoner was aware of the racial discrimination allegations levied against him earlier by Mr. Tert? No, Your Honor, there's no evidence produced by the investigation that Stoner knew about the internal discrimination complaints against him, nor more importantly, was Burke aware that there were any internal discrimination complaints made against him at the time when he denied Tert's request. Very specifically, Burke testified that he was not aware of those complaints at the time that he denied the request. And in addition to that, there was evidence produced in the investigation that Ameren's Human Resources Department does not disclose those internal discrimination complaints to individuals outside of the department and did not do so here. All right, thank you. So turning back quickly to my first point, Tert did not provide nor did this investigation reveal that substantial, excuse me, did not reveal substantial evidence to establish Tert's prima facie case of retaliation. To begin, Tert failed to establish that there was substantial evidence that the denial of his leave request was an adverse employment action. While an adverse employment action in the retaliation context is both context and fact dependent, here the denial of the leave request was not a materially adverse employment action that would have dissuaded a reasonable worker from lodging a complaint because Tert was not eligible for bereavement leave regardless of his internal discrimination complaints. The denial did not deprive him of any leave he would have been otherwise entitled to based on that legal relationship with Watkins at the time of his death. Next, even if Tert had established that his denial was an adverse employment action, he lacked substantial evidence to establish the necessary causal connection between his protected activity, the 2019 internal discrimination complaints, and the denial of his request. Now, temporal proximity between the two events can be considered, and an attenuated sequence of events without more is insufficient to establish that causal connection. For example, something as short as a six-month period has already been found to be too attenuated to establish that causal connection. And here there was at minimum nine months between Tert's internal discrimination complaint in September of 2019 and his leave request denial in June of 2020. Now, as a result, the time between these two events is simply too attenuated to create an inference of that causal connection. Moreover, Tert did not present, nor did the department's investigation reveal, any evidence that either Hamilton or Burke knew about Tert's complaints when his request was during the investigation that he was not made aware of those complaints at the time. And Ameren's Human Resources Department does not disclose this type of information outside of its department and did not do so here. Ms. Schroep, what about the fact that the other worker was allowed the bereavement leave? Your Honor, while it's unclear from the record why it was specifically that Tert's son, why his son's request was approved, I think it's important to emphasize that these were decisions made by two different supervisors and that when you look to the Prima Fossey case for retaliation, there is not a requirement that there be a comparator. Here we have to look to see whether or not there was an individual who engaged in protected activity. There's no question here that the internal discrimination complaints would have protected activity, that there was an adverse employment action, which as I've stated, there was no evidence that there was an adverse employment action here, and that there be a causal connection between those two events to establish that Prima Fossey case. Can the adverse employment action be proven by the son's application? Can you compare the adverse reaction and establish it by the fact that the son's request was granted? No, Your Honor. I don't think that you can use the son's approval to establish an adverse employment action in this case because not only is it context and fact dependent, but we have to look at each individual person. You use that comparator when there is a charge of racial discrimination, for example, that there was another individual who was treated better than the individual based on that protected class, and that simply is not one of the elements of a Prima Fossey case of retaliation here. I also think it's important to note that in these types of cases, the employer is allowed to use its discretion, especially when there is two different employees who have decisions being made by two separate employers. Wait a minute. I'm sorry. I'm sorry. Not two separate employers, but two separate supervisors. Right. But CBA is not a situation where you get discretion. I mean, you either follow the CBA or you don't, right? It's a contract. Correct, Your Honor. And ultimately, the question here is Tartt's request. While it's unclear as to why his son's request was approved, ultimately before this court is Tartt's request. And here we have to look to see whether or not he established a Prima Fossey case of retaliation. If he has, then we move on to the next step as to whether or not a non-retaliatory reason was provided. Here, very specifically, there was that Watkins did not qualify in Burke's interpretation of the language of the CBA, and there was no evidence that this was a pretextual decision. As I mentioned, there was no evidence in the record that Burke knew at the time when he denied this request that these internal discrimination complaints against him had been made. So you're saying even if you get past the second prong of proof, there's a non-pretextual reason, so they can't make the third element of retaliation? Correct, Your Honor. Even if, which appellees dispute that there was a Prima Fossey case of retaliation established here, even if that is the case, Amerine provided a legitimate non-retaliatory reason for denying that bereavement leave request, and there's no evidence in the record to suggest that that reason was pretextual. Here, Watkins did not qualify as an immediate family member under the CBA. Specifically, the CBA provided that employees could use bereavement leave for immediate family members, including fathers-in-law, but Tartt acknowledged from the get-go that Watkins was divorced from his mother-in-law at the time of his death, and Watkins was Tartt's wife's stepfather, making Watkins his ex-stepfather-in-law, a relationship that's not covered by the CBA's superintendent of labor relations who handles questions about the CBA. Burke was in the best position to interpret that language to determine whether or not Watkins' relationship with Tartt qualified, which it did not, and the commission here correctly declined to substitute its judgment for Amerine's interpretation of the CBA's language. Finally, Tartt offered no substantial evidence that Amerine made up a phony reason to deny his leave request to conceal some type of retaliatory motive. He offered no evidence to suggest that Burke or Hamilton were aware of and relied on those internal discrimination complaints when they denied his request. And in addition to that, I think it's important to note also that there's no evidence that Tartt and his son's requests were denied by the same individuals. As my opposing counsel suggested, that there may have been a question as to who, that both requests were denied by Burke, and that simply is not evidenced in the record. Tartt admitted that his son's request was denied by, or excuse me, was approved by a different supervisor. Tartt Jr. stated that his request was approved by a different supervisor, and Burke himself said that he did not approve Tartt Jr.'s request. So there's no evidence in the record to suggest that this was decided, that these requests were decided by the same individual and therefore were somehow applied inconsistently. And that's precisely why that Cooper v. Bombella injunction does not apply in this case, because the undisputed showed that Burke did not approve Tartt Jr.'s request. The commission here never made any credibility determinations about a contested fact. Instead, it relied only on undisputed facts, that both Tartt and his son admitted that another supervisor, not Burke, decided Tartt Jr.'s request. Now, because Ameren offered a legitimate non-retaliatory reason for denying Tartt's request, that Watkins simply did not qualify as an immediate family member under the terms of the CDA, and there was not substantial evidence that that reason was pretextual, the commission did not abuse its discretion here in sustaining the dismissal of Tartt's charge. And this court should affirm that decision. If there are no further questions, for the reasons stated here in our brief, we ask that this court affirm the final administrative decision of the commission. Thank you. Justice Welch? No questions. Justice Barberis? None, thank you. Okay, thank you, Ms. Shrove. Mr. Sevcich, do you want to unmute yourself? Yes, Your Honor. All right, just very briefly, it's apparent that Ameren through its supervisors exercised selective discretion for what they chose to deny Mr. Tartt his leave, and they chose to grant his son the leave, even though they were both in the same position. The only thing differentiating between father and son is the father, the charges of discrimination against Ameren. What we're seeing in the investigation and in the argument is that if a corporation can stovepipe or isolate the various supervisors and have them claim, I didn't know this, I didn't know that, well, then potentially they can get away with discrimination. This is not a case in court, once again, where you can engage in discovery. The enough evidence generated to justify continuing to pursue the claim. That requires more than a scintilla of evidence, but it doesn't even require a preponderance of the evidence. I think the mere fact that the two employees were treated differently, combined with a couple of additional facts, for instance, there had been no denial of any bereavement leave for two or three Jeff Burke was telling Greg Stoner to go after the plaintiff, but don't make it look like you're doing that. If you look at all that taken together, I think that that sufficiently raises enough evidence to permit this case to go forward, which is really what the question is here. The only other point I would make is I just cannot get it through my head that if a regulation says the Illinois Department of Human Rights shall file its investigation report, period, that somehow that does not include the, quote, attachments to the investigation report. I don't think here that the Illinois Department of Human Rights complied with its own regulations in supplying the Human Rights Commission with the appropriate record as required by the regulations, and that's an additional reason why I think that the court should reverse the Department of Human Rights decision and reinstate the case for further proceedings. Mr. Subject, did you raise that issue in your brief? Yes, I did, Your Honor. Okay. I didn't recall that. Thank you. I did, and in the reply brief, both, Your Honor. Yes. Okay. And, in fact, I filed motions asking for leave to supplement the record on that same basis also, so I think we're pretty well covered on that, in that aspect. And are the motions pending? No, they were denied. Okay. Okay. Anything else, Mr. Subject? No, Your Honor. Justice Welch? No questions. Justice Barberas? None, thank you. All right. Thank you both for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course. Have a great day. Thank you, Your Honor. That concludes the oral arguments for today. The court will be in recess until tomorrow morning at nine o'clock.